JOSHUA D. HURWIT, IDAHO STATE BAR NO. 9527
UNITED STATES ATTORNEY
CHRISTOPHER A. BOOKER, IDAHO STATE BAR NO. 7672
ASSISTANT UNITED STATES ATTORNEY
ROBERT B. FIRPO, CALIFORNIA STATE BAR NO. 243991
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | Case No. 1:23-mj-00108-DKG |
|---|---|
| Plaintiff, | **MOTION FOR DETENTION** |
| vs. | **(Timber Roberts)** |
| TIMBER ROBERTS, BROOKS ROBERTS, and JUDY ROBERTS | |
| Defendants. | |

The United States moves to detain Defendant Timber Roberts pending trial pursuant to 18 U.S.C. § 3142(e) and (f). Defendant is a dangerous and mentally unstable individual. He poses a serious risk of flight given the mounting and serious charges against him, his stated unwillingness to follow the law, and his transient and mobile lifestyle. He also poses a serious danger to people, law enforcement and the community if released based on his past conduct, including documented (and sometimes charged) acts threatening members of the public and law enforcement. Because there are no conditions of release or combination of such conditions that

MOTION FOR DENTENTION - 1

will reasonably assure his presence at court or the safety of the community, he must be detained pending trial pursuant to 18 U.S.C. § 3142(e) and (f).

**PROFFER OF FACT**

The Government may present evidence by way of proffer at a detention hearing, *see, e.g., United States v. Cabrera-Ortigoza*, 196 F.R.D. 571, 574 (S.D. Cal. 2000), and the Government intends to do so in this case. In advance of the detention hearing, the Government proffers the attached Affidavit of Forest Service Law Enforcement Officer Stacie Lockner. *See* Exhibit 1 (Affidavit of Stacie Lockner). This affidavit was filed in support of a Criminal Complaint issued by the Honorable Debora K. Grasham, U.S. Magistrate Judge, on May 9, 2023. The Government also proffers the May 22, 2023, and May 23, 2023, Pretrial Services Reports for Timber Roberts.

Following the issuance of the Criminal Complaint and LEO Lockner's signing of the affidavit, and prior to Defendant's arrest, Forest Service officers received an additional complaint involving the Roberts Family from a member of the public. On Tuesday, May 16, 2023, a concerned citizen sent an email to the Forest Service that stated the following: "There's been a camper that has been at the west face trailhead all winter. Today while out checking trails the individuals living in the camper yelled at vehicles going by and made me very uncomfortable. Furthermore, they've left a ton of trash by the trailer and there's a trailer in the parking lot that is on its axels. I felt uncomfortable using this area because of those individuals and know they're past the 14 day camping limit."

Law Enforcement executed arrest warrants for all three members of the Roberts Family on Friday, May 19, 2023, in the West Face Trailhead Parking lot where the family was illegally living. Timber Roberts was arrested at that time. During the arrest, an officer involved shooting occurred and Timber Roberts' brother, Brooks Roberts, was injured. A full investigation into

this incident remains ongoing and the Government is not currently in possession of facts sufficient to proffer at this time.

As part of the arrest, the Roberts Family's vehicles, trailers, and other equipment located at the West Face Parking lot were seized and are now in the possession of the Forest Service.

## STANDARDS OF REVIEW

A judicial officer must detain a person under 18 U.S.C. § 3142(e), if, after hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." In making that inquiry, the court considers those factors outlined in 18 U.S.C. § 3142(g), including the nature and circumstances of the offense, the weight of the evidence, the history and characteristics of the person, and the nature and seriousness of the danger to people and the community. "[T]he government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community." *U.S. v. Gerbo*, 948 F.2d 1119, 1121 (9th Cir. 1991).

## ARGUMENT

**A. The Court Must Detain Defendant Because he is a Danger to the Community, Represents a Substantial Risk of Flight Before Trial, and Because No Conditions of Release Can Reasonably Mitigate Those Concerns.**

The Court must detain the Defendant in this case because there are no conditions of release or combination of such conditions that will reasonably assure Defendant's presence at trial or the safety of people and the community. This conclusion is required based on the Government's proffer of fact and consideration of the section 3142(g) factors, each of which supports detention in this case.

1. **Nature and Circumstances of the Offenses Charged and Weight of the Evidence [18 U.S.C. § 3142(g)(1)-(2)].**

The Government charged Defendant in the Criminal Complaint with disorderly conduct, in violation of 36 C.F.R. § 261.4(c), unlawfully camping on Forest Service lands in violation of 36 C.F.R. § 261.58(a), and occupying a developed recreation site for other than recreation purposes in violation of 36 C.F.R. § 261.16(a). The Government previously charged Defendant by Information with seven additional class A and class B misdemeanors involving conduct on BLM and Forest Service lands, including threatening, intimidating or interfering with a forest officer in violation of 36 C.F.R. § 261.3(a). Like the charges in the Criminal Complaint, the charges previously filed by Information remain pending.

Many of the charges pending against Defendant are non-violent offenses involving unlawful acts on the public lands (e.g., camping too long on Forest Service lands). However, the broader circumstances behind those charges are critical and important. Indeed, the new charges against Defendant are the culmination of a three-year pattern of behavior where Defendant repeatedly demonstrated his unwillingness to follow or respect the law, even after being educated by law enforcement. Defendant's own statements confirm this truth, for example when he said the following: "I already told them in court, I'm not going to obey these stupid fucked up laws . . . I'm sorry, I told them already in court, that's out the window (following the laws)"). *See* Ex. 1 at ¶ 26. The increasing number of charges and Defendant's stated unwillingness to abide by the law highlights his flight risk and that no release conditions would sufficiently mitigate this risk. Indeed, there is little reason to expect a person who prides himself on not following the law to show up in court as required by law.

In addition to the non-violent public land charges, Defendant is also now charged with two aggressive acts: a disorderly conduct charge related to threats to a member of the public (charged in the Criminal Complaint), and a threats and intimidation charge related to forest officers (charged in the Information). These charges, related to more violent and aggressive acts, significantly increase Defendant's flight risk because Defendant is now being held to account for behavior that has otherwise gone unchecked and because Defendant has an increased potential for incarceration and significant penalties. These facts also highlight the danger Defendant poses to the community if released.

The newer disorderly conduct and threats charges, as well as the circumstances behind those charges, are also emblematic of Defendant's pattern of conduct over the last three years. Indeed, Defendant has repeatedly threatened or intimidated law enforcement or members of the public in recent times. *See, e.g.*, Ex. 1 at ¶ 47(c) (where Defendant threatened a 70-year old man in the West Face parking lot); Ex. 1 at ¶ 30 (where Defendant used lies to intimidate and force a target shooter off public land); Ex. 1 at ¶ 12 (where Defendant allegedly threatened a family with a machete); Ex. 1 at ¶ 34 (where Defendant tells BLM law enforcement that if members of the public touch the family's stuff, "they're going to get shot"); Ex. 1 at ¶ 40 (where Defendant threatens law enforcement, telling LEOs to "leave me the fuck alone or somethings going to happen fast," and threatens to set "booby traps"). The circumstances behind the new charges establish that Defendant's behavior is not changing; it's actually getting worse.

Not only has Defendant's unlawful behavior continued, but the Government's factual proffer shows that his conduct is an ongoing issue that has not been solved through (a) law enforcement education, *see* Ex. 1 at ¶¶ 10, 11, 31, (b) meetings with the U.S. Attorney's Office, *see* Ex. 1 at ¶¶ 15, 42, 43, or (c) fines, *see* Ex. 1 at ¶¶ 16-18. The failure of education, meetings

with the U.S. Attorney's Office, and fines to deter Defendant's conduct highlights the reality of the situation: Detention is the only reasonable solution moving forward. This is particularly true now, where Defendant's most recent unlawful acts (as charged in the Criminal Complaint) occurred on pretrial release immediately after he was ordered not to violate the law.

The Government has strong evidence to support the charges against Defendant, including witness statements, body-cam footage, Defendant's own words and admissions, and reports of contacts that establish Defendant's violations. That being the case, the weight of the evidence supports detention.

For all of the above reasons, the nature and circumstances of the offenses charged, including the weight of the evidence, favors detaining Defendant before trial.

### 2. History and Characteristics of the Defendant [18 U.S.C. § 3142(g)(3)]

Defendant has a lengthy criminal history, including convictions for assault or battery, petit theft, malicious injury to property, attempting to elude police, and possession of drug paraphernalia. *See* Ex. 1 at ¶ 49; *see also* Pretrial Services Report (May 23, 2023) at 2-5. According to the Pretrial Services Report, Defendant also has "two outstanding warrants in Gem County," and "numerous instances of failure to appear and probation violations." Pretrial Services Report (May 23, 2023) at 6. Consistent with other portions of this brief, Defendant's criminal history highlights a person who does not care if he violates the law and someone who, if convicted of the federal charges now pending against him, faces substantial penalties. These facts reinforce the risk that Defendant will flee before trial.

In addition, Defendant's criminal history contains charges similar to those that are now pending. Take, for example, Defendant's 2018 state conviction for Resisting or Obstructing Officers. Pretrial Services Report (May 23, 2023) at 5. This is the same kind of conduct at issue

now, as Defendant has repeatedly and recently threatened federal officers with booby traps and other harms if they enforce the laws against him or otherwise try to do their jobs. In fact, Defendant's conduct makes it clear that his modus operandi is to use intimidation and threats to attempt to get law enforcement off his back with hopes that his conduct will be ignored in the face of threatened officer injury. *See, e.g.* Ex. 1 at ¶ 40(a) (where Defendant becomes angry when BLM tried to serve him citations on Forest Service lands, yelling "They're out of their jurisdiction," and "leave me the fuck alone or somethings going to happen fast. Go away!"); *see also* Ex. 1 at ¶ 40(b) (where Defendant characterizes BLM's law enforcement activities as "treason," notes it's a "hanging offense," and states that BLM LEO Brian Adams was "about to get his ass majorly hurt with booby traps.").

In addition to his criminal history, Defendant is mentally unstable[1], has few if any family ties, has no home or residence, is unemployed, and lives a transient lifestyle. When the United States Court of Appeal for the Ninth Circuit reviewed similar facts in the context of detention, it affirmed the District Court's order of detention. *See Gerbo*, 948 F.2d at 1121 (noting that that district court based its detention order on Defendant being "transient," unemployed, having no family ties, and living in a van). Defendant Timber Roberts' transient lifestyle and willingness to move about supports detention here, in part because it highlights Defendant's ability to pick up and leave on a moment's notice. *See* Ex. 1 at ¶¶ 23-24 (where BLM law enforcement expressed concern that instead of using financial resources to secure lawful housing, the Roberts Family used funds to acquire more vehicles and belongings to support their unlawful camping

---

[1] Defendant's instability is highlighted by the following proffered fact: After Defendant threatened a 70-year old man, the man characterized Defendant as "presenting himself in a very hostile, erratic, and unhinged state of mind." *See* Ex. 1 at ¶ 47(c); *see also* Ex. 1 at ¶¶ 42-42 (where Defendant was involved in aggressive statements toward law enforcement and U.S. Attorney's Office staff).

MOTION FOR DENTENTION - 7

activities; Timber Roberts also admitted to buying a van). Accordingly, there are no conditions of release that can reasonably assure Defendant will not flee to an undisclosed location if released before trial. *See also* Pretrial Service Report (May 22, 2023)(Time Constraints Memo) at 1 (where, on March 20, 2023, the Roberts Family refused to provide pretrial services with Defendant's contact information or a means to contact Defendant, and informed pretrial services that the family intended to move to an "undisclosed" location).

In addition, Defendant is the kind of person who lies to get what he wants, which further undermines any claim that he may make that he will appear in court as required in the future. *See, e.g.* Ex. 1 at ¶ 30 (where Defendant lied about owning federal land in order to force a target shooter off of the land); Ex. 1 at ¶ 47(c) (where Defendant, while accosting a 70-year old man, lied and told the man that he (Defendant) "is the fucking police," said he was a "special investigator," and that the other man had to "get the fuck out" of the public parking area). Defendant's lies also undermine his claim, as reported by Pretrial Services, that he "plans to reside at Interfaith Sanctuary" if released before trial. *See* Pretrial Services Report (May 23, 2023) at 2. There is no reason to believe this claim, especially considering the extent to which the Government tried and failed to secure similar support for Defendant. *See, e.g.*, Ex. 1 at ¶ 14 (where Forest Service law enforcement suggested housing options for Defendant in 2020-2021); Ex. 1 at ¶ 25 (where after law enforcement connected Defendant with the CATCH Program and Interfaith Sanctuary in May 2022, Defendant failed to fill out necessary paperwork); Ex. 1 at ¶ 27 (where BLM law enforcement escorted two people from the CATCH Program to Defendant's unlawful camp).

Finally, the charges outlined in the Criminal Complaint are based on conduct that post-dated Defendant's initial appearance and arraignment on the Information. This is important,

because one of the conditions of Defendant's release at that time was that he "not violate federal, state, or local law while on release." *See United States v. Timber Roberts*, 23-cr-00053-DKG, ECF No. 30. He brushed aside that condition of release with the same disregard for the law that he has shown over the last three years. In addition, and further supporting detention and Defendant's risk of flight, Defendant refused to participate in the pretrial services investigation process after the Government filed the Information in February 2023, and Defendant's family refused to provide a means to contact Defendant.

For all of the reasons noted here, Defendant's history and characteristics support detention.

### 3. Nature and Seriousness of the Danger to People and the Community [18 U.S.C. § 3142(g)(4)]

Defendant has shown a pattern of aggressive, combative and threatening behavior toward the public and law enforcement. This behavior shows that he presents a substantial danger to people, law enforcement, and the community. This weighs strongly in favor of detention.

The facts proffered by the Government show that Defendant has and will continue to threaten and intimidate members of the public if he is released. In June 2021, Defendant allegedly threatened a family with a machete, *see* Ex. 1 at ¶ 12. In August of 2022, he threatened a target shooter, and later told BLM law enforcement that if members of the public touched the Roberts Family's stuff, "they're going to get shot." Ex. 1 at ¶¶ 30-34. And in Spring of 2023, he threatened and scared both a snow-plow driver and a 70-year-old man. *See* Ex. 1 at ¶¶ 47(a), 47(c). Coupled with his criminal history, Defendant presents a clear danger to the public if he is released. His own acts compel this conclusion.

In addition to threats to the public, Defendant has shown an unabashed willingness to threaten and intimidate law enforcement. He has repeatedly used the threat of "booby traps" to

deter law enforcement activities, *see, e.g.,* Ex. 1 at ¶¶ 40(b), 42, 47(b), stated plainly that people or law enforcement were going to get "hurt" or that something would go "boom" if law enforcement did not comply with *his* demands, *see, e.g.* Ex. 1 at ¶ 47(b), 34, and insinuated that law enforcement officers would be "hung" if they continued to engage in law enforcement activities, *see, e.g.*, ¶ 47(b) (where Defendant states, "you try to take my freedom away its treason and you will be hung for it"). These threats establish beyond a doubt that Defendant presents a serious threat to law enforcement and other federal officers. This is particularly true here because Defendant's threats were premised on law enforcement enforcing laws, arresting him, or taking his things. Because law enforcement has now enforced laws against Defendant, arrested him (as of May 19, 2023), and seized his belongings (again, as of May 19, 2023), the precondition to violence established by Defendant's own statements has been met. By his own account, law enforcement is at serious risk if Defendant is released pending trial.

Defendant Timber Roberts is a dangerous person. That is established by his criminal history, his behavior over the last three years, and his willingness to threaten anyone and anywhere to get what he wants. For these reasons, the nature and seriousness of the danger he presents weighs strongly in favor of detention.

## **CONCLUSION**

Defendant represents a substantial flight risk and danger to the community. Given the mounting charges against him, the seriousness of those charges, his transient lifestyle and his stated unwillingness to follow the law, there is a substantial risk that Defendant will flee before trial. The Government has established his risk of flight by a preponderance of the evidence. Moreover, Defendant's criminal history and conduct over the last three years establishes by clear and convincing evidence that Defendant represents a serious danger to the community and the

public. For these reasons, there are no conditions of release or combination of such conditions upon which Defendant may safely be released, and therefore he must be detained pending trial.

Respectfully submitted this 24th day of May, 2023.

JOSHUA D. HURWIT
UNITED STATES ATTORNEY
By:

 */s/ Robert B. Firpo*
ROBERT B. FIRPO
Assistant United States Attorney

 */s/ Christopher A. Booker*
CHRISTOPHER A. BOOKER
Assistant United States Attorney